The Consolidated Appeals in 20-1238, 20-1262, 20-1263, Colorado v. EPA And we are ready to proceed when you are Thank you, Your Honor. May it please the Court, Jonathan Dreifdahl from the United States Justice Department Mr. Roper will speak for two of Appellant's 15 minutes And I will reserve two of my remaining 13 minutes for rebuttal The District Court erred by concluding that a famously fractured Supreme Court decision Interpreting a famously ambiguous statutory provision Addressing a materially different legal question than that which was presented by Colorado in its challenge below Prohibits the agency's reasonable Chevron Step 2 interpretation of navigable waters, meaning waters of the United States To the contrary, as another District Court in San Francisco correctly recognized When denying a nationwide preliminary injunction based on the same arguments regarding the same rule Colorado had no likelihood of success on the merits and hasn't In fact, the District Court below erred on each of the four elements of the winter preliminary injunction test Including irreparable harm, public interest, and the balance of harms Now, on the likelihood of success element The Supreme Court's Rapanos decision and its various opinions Whether the Scalia plurality, the Justice Kennedy concurrence, or the Justice Stevens dissent Are simply not addressing the legal question presented by the navigable waters protection rule The Rapanos case was analyzing what the Clean Water Act says the agencies may regulate How far can they reach? Can they regulate any hydrologically connected wetlands that can trace to the sea? But the Rapanos case was not addressing the legal issue relevant here What the language of navigable waters requires the statute must cover So even if you assume the dissent were the holding of the Rapanos case And it is not, it would still not bar the agency's adoption of the navigable waters protection rule Because the case is simply distinguishable The dissent itself said all that they were doing in that case Was looking to determine whether the agency's construction was reasonable They weren't looking at how far the rule must go or the Clean Water Act must be read Now, plaintiffs nevertheless seek to overturn the navigable waters protection rule Based on an implicit argument that they have to go farther But that cannot be the teaching of Rapanos and the crisscrossing opinions as Colorado argues And in fact even the district court inadvertently acknowledged the fallacy of its logic When it wrote in footnote 11 of its opinion Quote, the problem for the agencies unfortunately Is that Rapanos arguably forecloses every formulation of waters of the United States Proposed in Rapanos or proposed by the agencies thus far For example, eight justices rejected Justice Kennedy's case-by-case significant nexus approach The approach that Colorado is arguing that the agencies now should have to go back to Was the basis of the preliminary injunction Your honors, despite that bright red flag That something was really wrong with the logic of the district court's own argument Because really perverse consequences flowed from it The district court still erroneously accepted Colorado's flawed theory And that's because it failed to acknowledge that Rapanos is just flat-out distinguishable legally on its face No matter whose opinion control Now even if one presumes that Rapanos case opinions control the legal question presented by Colorado Which is how far must the agencies regulate not how far they may regulate The Supreme Court in Brand X and Chevron still recognizes agency authority to reinterpret statutes Notwithstanding contrary prior court decisions So Brand X allows reinterpretation of a statute So long as the statutory language doesn't unambiguously bar the interpretation taken by an agency And there's been no such agency here Or excuse me, your honors, there's been no such argument made here The argument is that Rapanos somehow unambiguously bars this reading So it was also error for the district court below to fail to apply Brand X To recognize that the agencies were entitled to reinterpret the statute And a famously ambiguous statute Notwithstanding whether the Rapanos decision was controlling for its purpose Its legal holding and its facts or not Now the interpretation of the Clean Water Act in the Navigable Waters Protection is reasonable And we know that because the agencies actually thoughtfully harmonized key features Of all of the various major opinions in the Rapanos decision They used Justice Scalia's interpretation of navigable waters as a starting point But the agencies also incorporated other features with a significant nexus to navigable waters In order to meet some of Justice Kennedy's issues So going beyond the plurality decision What the plurality would say is the appropriate reading or limit to the Clean Water Act The agencies here actually included waters and wetlands that have a connection to navigable waters Or perennial or intermittent tributaries at any point during a typical year Not simply a continuous surface water connection They also included waters that are adjacent and only separated by natural berms or swales Again, going beyond the Rapanos plurality In this way, the agencies also responded to the primary criticism of the Rapanos dissent Specifically, the dissent opined that the text might reasonably allow agencies to extend jurisdiction Beyond a continuous surface water connection between a wetland and a creek And again, the agencies did just that Now against this thoughtful interpretation of navigable waters In light of the Supreme Court precedent Including also the Swank decision Which definitively holds that there is a stopping point to the term navigable waters Short of the interstate commerce clause Colorado points only to generalized objective provisions of the Clean Water Act  But the Supreme Court has repeatedly made clear, of course That generalized policy provisions cannot be used by courts and litigants To negate the text of more specific implementing provisions And in fact, in the Supreme Court's 1985 Riverside Bayview case The Supreme Court specifically said Quote, neither of these sources Referring back to the legislative history and the objective provisions Quote, neither of these sources provides unambiguous guidance for the Corps Outquote, about how to interpret waters of the United States And so those provisions can't be used to contradict and say That the navigable waters protection rule interpretation is unambiguously wrong Moreover, the agencies have, consistent with those sources Given the term navigable waters That's the term in the statute, waters A broad reading, consistent with the legislative history The agencies have continued to extend Clean Water Act jurisdiction To include adjacent wetlands Not just the waters referenced by the plain text of the statute So unless there are questions about that I want to move on to the issues with the irreparable harm finding So under the Supreme Court's winter test The Colorado had the burden to establish each of the four elements But the only issue on which they found irreparable harm This enforcement issue Had really significant evidentiary problems Now to be clear, the district court rejected all of the other theories of harm That were argued by Colorado on the record Including on the issue of the permitting gap They rejected it because the inability to authorize projects Was Colorado's own choice, their policy choice to make that paramount They also relied on the fact that there was no evidence of projects in the imminent future They also relied on the fact, the district court also relied On the fact that any such harm would be to developers Not to the state, which cannot sue Parents Patriot for developers They also rejected, of course, that there would be any environmental harm Given the existing Colorado authority that bars any discharges to any state waters And very critically, the court looked at the baseline Which was to say that nothing about the Navigable Waters Protection Rule Would make allegations that people might pollute Contrary to the law, any more or less likely as a result of that new rule Therefore, there's no harm traceable to the Navigable Waters Protection Rule Now with respect to the one issue on which the district court Did find irreparable harm and erred It was done on a passing sentence of hearsay In one line of one declaration And thereby a major federal regulatory problem Which a district court, again in San Francisco Looked at all these same arguments and rejected On that thin read, it found irreparable harm But in doing so, it jumped numerous evidentiary gaps In order to get to irreparable harm Let me interrupt for just a minute And clarify what the standard of review is We're reviewing because the district court Passed on the issue below Finding that this was raised We're not looking at preservation Whether they raised it directly We're looking at whether the district court abused its discretion In making the affirmative determination  You're looking at both, your honor But even accepting that the argument was sufficiently raised And we think that this argument was not sufficiently flagged For there to have been an injunction As against a major regulatory program There are still multiple evidentiary gaps that got jumped Let me hit those real quickly So even if you accept there are three to five Federal enforcement actions There is no evidence in the record As to what federal regulatory enforcement policy is With respect to EPA enforcement actions And whether that enforcement policy Would ever have actions brought In the narrow, marginal, disputed waters Between the navigable water protection rule Any significant nexus test So the court just flat out assumed That first of all, there would be That again, as against that baseline That there would be an incremental impact Which it, by the way, studiously And very carefully rejected in all of its other arguments But missed the boat entirely here That there was no evidence that Federal regulatory enforcement policy Regularly brings actions Or ever brings such actions In these disputed waters But secondly, even if you assume they did The timing question that any such actions Would not be brought in the gap The period of time that would be necessary To adjudicate summary judgment Versus having a preliminary injunction And then one further evidentiary gap Is that the failure to bring An enforcement action promptly Would actually result in any Irreparable harm to Colorado As Colorado, your honor There is no such evidence And so it could easily be the case That after the parties went to summary judgment And summary judgment was decided That enforcement actions could be brought Later at that time And utilizing the preexisting law That will continue to be on the books Which, in particular, under the state law That state law was never changed And remains enforceable Both by Colorado authorities And federal authorities, your honor So there was no evidence of irreparable harm Even if you accept this theory on its face So I wanted to reserve some time for rebuttal And Mr. Roper's time So I'm going to reserve at this time Unless there are questions Okay, and with the consent of the panel I'm going to be giving a little extra time On this case because of the complexity To both sides All right, thank you You can reserve Thank you, your honor Good morning, and may it please the court Your honor, if I could interrupt for a second Are we setting 15 minutes for Mr. Roper Separately from Mr. Brightville Or is he using the remaining Two minutes and 30 seconds of Mr. Brightville's time He's using the remaining 2 minutes and 30 seconds Of Mr. Brightville's time But we'll give them some time on rebuttal Okay, thank you That they can split however they decide On the fly right now Okay, thank you Thank you, good morning, and may it please the court Glenn Roper on behalf of Intervenor Appellants, the Sacketts Our position in this case is simple The revised definition of adjacent wetlands In the Navigable Waters Protection Rule Is compelled by the Clean Water Act As interpreted by the Supreme Court In Rapanos With respect to adjacent wetlands The Rapanos plurality would hold That directly abutting wetlands Are regulable, but that non-abutting Wetlands are not In his concurrence, Justice Kennedy agreed That directly abutting wetlands Are regulable, but he would also hold That non-abutting wetlands Like those that the EPA alleges Are on the Sacketts property May also be regulated In at least some circumstances Under the Tenth Circuit case law that we cite in our brief The Rapanos plurality Therefore provides the holding As to the issue of adjacent wetlands Well let me interrupt Doesn't the In order to be The controlling holding under Our case law Doesn't there have to be a subset One opinion is a subset Of the other Do we have that here I think we do have a logical subset As to the issue of adjacent wetlands Because as Justice Kennedy Recognized all of the Pluralities wetlands All that would be encompassed by their test Was also encompassed by his test But his test would also go broader And include additional wetlands And so for that reason The navigable water protection rules Reduction in regulation of Adjacent wetlands is compelled By the statute and it's not an exercise Of agency You're making an assumption that any time You have a budding wetlands That there's Also a significant Impact Right We would follow the plurality Decision which is when you have I think Justice Kennedy would As a matter of law conclude that there  And so the plurality concluded That when you have A budding wetlands such that they are Indistinguishable that you are going To have this connection such that it is Appropriate to include the wetlands In the regulation And if there are no further questions We would ask the court to reverse The district court on the likelihood Of success and vacate the state As to the issue of adjacent wetlands Thank you Thank you And Greg Would you go ahead and set the clock For 17 minutes so that I can give two minutes on rebuttal Good morning May it please the court Eric Olson on behalf of the state of Colorado Mr. Olson would you wait for just a minute The clock hasn't been set There we go Thank you very much Judge McHugh Entering the stay here was well Within the district court's discretion And this court should not disturb It for three reasons First it is Not reasonable under Chevron For agencies to define Waters of the United States Using a definition That five justices have rejected And is inconsistent With the Clean Water Act's text And purpose Second and independently The agencies enacted The rule in violation Of the Administrative Procedure Act And the Corps of Engineers Issued its rule in violation Of the National Environmental Policy Act Third Colorado faces substantial Irreparable harm If the rule goes into effect And presented evidence of that harm To the district court Turning first to the Rapano's Decision It makes clear That new rule is not reasonable Under Chevron The government, the business intervenors And Colorado all agree That we are in Chevron step Two territory Where we look the agency must Do Enact a rule that is reasonable And it is not reasonable here Because five members of the Supreme Court have said the rule cannot Be as the government Now claims it is Because five Justices have said The rule cannot be as the Government now claims it is, it is simply Not reasonable for the agencies To enact that rule And we know That when we look at the Rapano's Decision itself It says in the three Key writings by Justice Scalia, Justice Kennedy and Justice Stevens That five of the justices said A reasonable interpretation Of the Clean Water Act Says that the floor Must be navigable Waters plus Waters that have a significant Nexus to those waters And under that Determination The core and the EPA Was not entitled to take The protection far below Navigable waters plus Waters with a significant nexus Which they have done in this rule When you're counting those votes You're looking at the dissent Also I'm looking at what each justice said Because we're not in Mark's territory For what's controlling because We agree with your honor that there is No controlling decision there But what we're looking at is each Writing and we're looking at The plurality opinion By Justice Scalia had four votes Justice Kennedy spoke alone And then Justice Stevens spoke In an opinion that was joined by four And when you look at the Totality of the opinion It was five votes Said that Chevron applies Keep in mind the plurality says Chevron doesn't Apply that the rule can Can mean and must only mean Wetlands physically connected To relatively permanent and continuously Flowing waters five said Chevron Applies and under Chevron A reasonable Rule there's a lot of discretion for the agency But it must include at least Those waters that have A significant nexus when you Look at the five and it's no surprise based On that this is not just sort of our Theory here Every court of appeals to have Concluded that the Clean Water Act must cover at least That as set forth by Justice Kennedy the significant nexus Test and the solicitor general The United States recognized in a Filing last year That fact that every court of appeals to Look at this has said the rule The test from Rapanos is The significant nexus test and So when we when you have That backdrop for the agencies To come in and adopt a much lower Standard is Simply not reasonable Under the framework where we are Does it matter if Rapanos Was looking at The Furthest reach of the act And not What must be regulated That's the argument On the other side isn't it It is and with respect to my friend's argument on the other side The issue in Rapanos Was not the furthest Or what must be it was Was the agency's definition Of waters of the United States Appropriate Legal under the controlling law And Because Of the posture of that case That Justice Scalia's Plurality opinion which said it was not Joined by Justice Kennedy which said it was not In that particular case They said that rule specific Rule was not consistent With the agency's obligations But if you took that same analytic Framework and applied it to the Rule at issue today In other words this rule was being Challenged at the Supreme Court and The question was was it legal We know what the outcome Would be under the Rapanos decision Because Justice Kennedy Would say no it is not Because it does not include a significant nexus Justice Stevens and the three Justices that joined him would say no It is not because it is Below the floor Of It sets much too far below The floor when you read the opinion so it would not be Reasonable so it was not That question was not squarely presented that is Some advocacy by my friends To present the case Saying it was Different than it was What was presented was was that rule Permissible and the court And Rapanos said the rule at issue There was not permissible And they gave different reasons for Reaching that conclusion which is why we have The 414 Spread The question in Rapanos Was are they taking It too far by Basically using the Migratory Bird Act interpretation Right No the Migratory Bird Act was The Cook County case I'm sorry But the question in Rapanos Was is the definition Consistent with the Clean Water Act of Waters of the United States Consistent with the Clean Water Act and the Court said that definition was Not But The same too is the question That the district court was presented And we have in this case is This new rule consistent with the Clean Water Act and we submit That under Chevron where we all agree The business intervenors the federal government and Colorado agree we're in Chevron step two It is simply not reasonable to adopt Different agencies to an adopter rule That five justices have expressly Rejected Unless there's more questions On Rapanos I would like to turn to the other series That we have in this case The Administrative Procedure Act and the National Environmental Policy Act council before We get into that detail I want to be Sure that we get into the question Of irreparable harm And whether or not you're going to can Win on this Understand Rapano I've read it everything for its Confusion and 414 Where are we as we go To the you know To the preliminary injunction Where is this case if we Reverse and say That there was no irreparable Harm in this case What happens to this case But we're required to show irreparable harm To attain an injunction and if you disagree With us then we don't keep our injunction Okay well that's my I know That what I'm saying is where are You where are the parties in this Case if we say There the court heard In granting a preliminary injunction What what's the status Of the case well The the substantive case Would be ongoing there's many many challenges To this case across the country So the case would be ongoing all that's At issue here is a preliminary injunction Or the the APA Five section 7005 power to stay The enforcement of the rule right now In Colorado the old rule applies If you find that we don't show irreparable Harm the new rule would apply in Colorado Why we litigate the merits Of the case the effect of that Is your own rule that You don't recognize any Colorado's take a real Stringent requirement In that you're not going To fill in any wetlands or anything We're not giving you any permit But if the government grants you A permit then we will recognize That permit until It ends or whatever it is Now I want to spend A little time before all your time On the irreparable harm It appears to me that Colorado could correct this rule Themselves real quick by adopting Some provision The legislature in the state of Colorado By adopting some provision That gives them A permissible or permitted Requirements In in regards to wetland Now why Should you Get a preliminary injunction On Colorado's own Creation of where the law is in regards To this because you have no laws Because for decades Colorado has relied on the permitting Process that is The federal government has administered And the Corps has administered under section 404 For dredge and fill permits for decades Like 46, 45 other states For them to drop The amount of water cut to less than 50 percent of the stream miles in Colorado Is our estimate of what would No longer be covered Without giving us the time We absolutely agree Judge Baldock We could put in place a regulatory Regime that could fill that gap But we can't do that in 60 days Which is all that they gave us under the rule And that's why we are irreparably harmed Because we Colorado's legislature Was not in session from the time The rule was issued to its effective date They purposely haven't been in session Well Your honor our constitution Limits the number of days Our legislature can be In session and with COVID Those days have shrunk that is correct But importantly We have not had an opportunity to fix this In the notice I think very telling what the federal government relies on In this reliance argument That we made in their reply brief at page 9 they point to Page 9 to 11 They say look we Say we recognize that it takes Political capital and fiscal resources to Change state law But we are not going to speculate on What the state governments are going to do In response to this rule but we Acknowledge that Colorado has no permitting Process and so we Submit that the harm from giving us 60 Days to stand up a Permitting process when under the Colorado Constitution our legislature wasn't even in Session during that time We tried our level best to try To get something going but we need legislative Authority for that to happen And that is arbitrary and Capricious in our view and creates Harm now of course if they gave us 12 months this argument Would be much much weaker because we would have The time and the ability to put up The resources to put That new permitting process in place but When they drop the scope of The permitting process They give us roughly 30% Covered waters in Colorado from around 80% to 30% of the waters And they don't give us time to put in A regulatory regime to Fix that and the permitting process is Really important because it's an information Forcing rule it requires Polluters to come to us and say we're Going to do this here's how we're going to Minimize damage here's how we're going to Put it back when we're done and here's how We're going to mitigate it elsewhere Without that interrupt mr. Olson That's not the basis of irreparable Harm that the district court found Is it correct district court rejected That correct that is correct Said that your irreparable harm Is because You're going to have to divert State funds to Create your own Enforcement program And that that is the What I call the enforcement Burden on the state Is the irreparable harm here Correct and we submit their two Sides of the same coin because The resources that we have to Expand are much greater because There is no permitting process It's a difference between People coming to the government and say I plan To do this may I have permission And us required that this is A harm the district court found for us to Go out and find people Over 30% of The waters that now are our waters and not the To us we have to go to them and that's The harm the district court found and Not abusive discretion Inflicted because of the Colorado approach Which is there Will be no dredge and fill permits No not at all because We have relied on the EPA The Corps of Engineers excuse me To administer that program like 45 Other states for 20 Or 30 some years and so In the context of that substantial Reliance for a tremendous Amount of time it is not unreasonable For Colorado to not have a backup Permitting process at the Go in the event That the rule changes We submitted in April 2019 Our comments to this proposed rule And said exactly this that we don't Have a permitting process And and it would cause harm To us for it to be implemented Takes time for state laws to change In the government when they issued The rule in April of 2020 again gave us 60 days Which was under any fair reading of Our statutory provision Was not permissible And let me interrupt Because it's hard to get in there because you keep Talking I think the response was Well you've known Since the executive order Was signed here I mean you know there was an executive Order changed the rule And make it comply with Justice Scalia's opinion Isn't that no fair notice We have been on notice. No it is not We have been on notice that they're going to change The rule several times But until the final rule was issued What is the first indication that we Had made the comment about State enforcement and that that comment did Not lead to a change in the policy So we did not know the rule Was going to change until April of this year I do also want to briefly Address the two Other causes of action National American Policy Act and the Administrative Procedure Act briefly if I may The district court did not address these And this court has The option of addressing it itself And we believe for the reasons stated In the brief both APA and NEPA against the core Violated or it could send it back to The district court for additional work. We would Just respectfully request that if it does Send it back to the district court to address in the first Instance that the court do what it did In Rutherford the United States Which is use the authority under Five USC 705 which was the basis of the district Courts stay here to keep The stay in place keep the status quo In place in Colorado while the district Court addresses those Issues and Just like to make one last point on irreparable Harm the government Spends a lot of time talking about The gaps in our evidence But they had an opportunity To present evidence to the district court Of how the federal enforcement worked They knew our arguments. We Submitted declarations from state Worker state folks that administer This including Miss Rowan Who talked about the harm from enforcement The government never responded With evidence. So the district Court ruled on what it had before it. The government Had a chance an opportunity to make those Arguments using facts rather than After the fact legal arguments And they chose not to do so. And we think That would be a very unfair Basis. I've got To ask you this question. Then who Has the burden to show the harm That you We have the burden of showing harm We showed up in district court with Evidence. If I may answer And the government Did not present evidence Going the other direction, even though they had A full opportunity to do so. So we don't think it's Fair for us to present Evidence and the government not to present Evidence and then them to say Now our evidence is deficient Or not enough. It was a factual Inquiry and the government Chose not to present evidence And they of course can Come and say what we showed wasn't enough But for them to say that what We showed has all these holes And gaps About their conduct And they chose not to present any evidence Is a step too far From our perspective. Thank you You're out of time. Thank You very much. All right. And there's Two minutes on rebuttal Mr. Breitbill, are you Handling that? And you're muted just So you know Yes, I am, Your Honor Thank you, Your Honor. I actually think that Argument by Mr. Olson is really disingenuous The final preliminary injunction Was filed on June 1st, 2020 We had to respond on an expedited basis By June 8th, 2020 The court ruled on June 19th, 2020 So this was at lightning speed We were limited to 22 pages to address All the issues They have the burden to present Evidence to meet all four winter factors They did not do so We did cite evidence to the record That the court could take judicial notice Of the many aspects of the administrative Record. Now again, with All due respect to my colleague, everybody needs to Understand that the question of Rapanos Was what Was about two properties And whether those two properties Whether the court had properly asserted Clean Water Act jurisdiction over those Two properties and whether those Constituted adjacent wetlands And so the question was, can you reach those? May you reach those? Four justices said Absolutely not. Prohibited by the plain text Of the statute. One justice said Maybe, maybe not Need more evidence and four Justices said nearly that it was Reasonable to read the act That far. That was all The farther that those four justices went Not with all due respect that they must Reach that or that we must reach Adjacent wetlands. And that's in the Rapanos Decision at 126 Supreme Court 2263 Quoting from the dissent In any event, the proper question is not how The plurality would define Adjacent but Whether the court's definition is reasonable And they went on to say the definition is Plainly reasonable, both on its face And in terms of the purposes of the act, Your Honor So they were not holding That this unambiguously required That the statute must Reach those wetlands or other similar wetlands It's an open, novel question Now on the irreparable harm, they also Say they only had 60 days As Your Honor pointed out, they had All kinds of notice and this was an argument That was made to and rejected By the district court and that There is no clear error Here that they had Ample notice and opportunity to change Directions if they wanted to but did not, Your Honor Thank you. Unless the court has Further questions, I see I'm Out of time. You are Thank you for your argument today We will take this under advisement